49021, 49022. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY v. McGIVERN; and vice versa.

49023, 49024. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY v. McGIVERN; and vice versa.

PANNELL, Judge.

These appeals and cross appeals are from orders of the trial judge. (1) Orders partially sustaining defendant's motions to strike, and impliedly overruling in part, entered November 5, 1973; and, (2) orders overruling defendant's motions for summary judgment entered the same date. The orders were certified by the trial judge for immediate review pursuant to Ga. L. 1965, p. 18; 1968, pp. 1072, 1073 (Code Ann. § 6-701 (a2)).

The paragraphs of the complaints, pertinent to the motions to strike, are identical in each complaint, although differently numbered. For the purposes of this decision we will deal with the allegations of the complaint in the Pauline McGivern case, the rulings in reference to which will control both cases. The complaint in this portion contained the following allegations, Par. 10A by amendment: "8. *There was no lifeguard or experienced person present to revive Plaintiff's son* and there was no safety equipment nor persons present capable of operating any safety equipment *and there was no telephone immediately available by which help could be summoned, and Plaintiff's* son died. 9. *Although Defendant had been operating the swimming pool where the incident occurred for a long period of time,* Defendant had failed to have available any attendant or *lifeguard* properly instructed in the art and methods of life saving or artificial resuscitation, and by the time properly trained persons capable of giving such aid could be brought to the scene, Plaintiff's son was dead. 10. At said time and place, there was in full force and effect a duly enacted Ordinance of DeKalb County, Georgia, which the Defendant is subject to, as follows: *Code of DeKalb County, Georgia, Appendix I, Article XIII, Section 192.* 'During bathing hours, there shall be present at each pool at least one competent attendant who shall actively supervise the

operation of the pool and its appurtenances and shall be responsible for enforcing all applicable provisions of this Article and other rules or regulations pertaining to safety or sanitation. . . ' (7-11-52, Section 4.) and, *Section 195 (d)*. 'All reasonable precautions shall be taken to protect bathers from accidents and injury. Convenient means of ingress and egress shall be provided, and the depth of water and any irregularities of the bottom shall be clearly indicated. Safety appliances such as life buoys, life hook, and similar equipment, and first aid kits shall be provided, properly stored, readily accessible, and well maintained.' (7-11-52, Section 6.) 11. Plaintiff's son's death by drowning was directly and proximately caused by the following acts of gross negligence by the Defendant: (a) Its failure to employ at said pool *a lifeguard* or other competent attendant with the authority and capacity to enforce rules and safety and trained in and competent to apply emergency rescue work or methods of resuscitation and life saving; (b) Its failure to provide and maintain any safety appliances and first aid kits with *proper resuscitation equipment* for life saving purposes; (c) Its failure and neglect to have someone on duty at the pool for purposes of keeping a watchful eye over bathers, and particularly the Plaintiff's son; (d) Its failure to have *a lifeguard* or other competent attendant, properly instructed in the art and method of retrieving drowning persons or in the art of life saving and artificial resuscitation; (e) *Its failure to maintain a telephone at or near the swimming pool for the use of the tenants, and particularly Plaintiff herein, with which to summon emergency help.* 12. Defendant's violations of the DeKalb County Ordinance, recited heretofore, were wilful and malicious and Plaintiff shows the following in support of said allegation: (a) *Defendant is a large insurance company, with full and complete knowledge and data regarding the risks and probabilities of occurrences such as the incident herein pled;* (b) *That despite such knowledge and information,* the Defendant has failed to abide by the laws of the County of DeKalb County, Georgia, has failed and refused to maintain *lifeguards,* attendants, life saving equipment and *resuscitating equipment* at their pool, all to the detriment

of the general public, and more particularly to the Plaintiff and her son; (c) Said conduct by the Defendant, being in derogation of the laws of Georgia, constitutes negligence, per se; (d) *Defendant, being a large insurance company, and fully knowledgeable of the risks and probabilities of swimming pool deaths, has opted to spread the risk of such incidents upon the general public rather than go to the expense of maintaining proper safeguards which would go towards eliminating such deaths;* (e) Subsequent to the death by drowning of Plaintiff's son, Defendant failed and refused to maintain either *lifeguards,* attendants, life saving or *resuscitating equipment* and continues to fail to do so." Paragraph 10A attached a printed copy of a publication entitled "Public Swimming Pools — Recommended Standards of the Georgia Department of Public Health." Paragraph 13 alleged wilful, malicious and wanton negligence primarily based upon alleged violations of the DeKalb County ordinance, and sought punitive damages in the amount of $1,000,000, plus reasonable attorney fees of $350,000. Paragraph (c) of the prayers also prayed for recovery of this amount. This prayer, together with the allegation in paragraph 13 that the plaintiff is entitled to punitive damages in the amount of $1,000,000, plus reasonable attorney fees of $350,000, were stricken. The portions of the other paragraphs stricken pursuant to the motion to strike have been italicized.

The evidence adduced on the motion for summary judgment showed substantially the following facts: Appellant insurance company owns and operates the Beacon Hill Apartments in DeKalb County, Georgia, which complex includes a swimming pool. On July 3, 1973, Mrs. Pauline McGivern and her husband, Mr. Charles R. McGivern, the cross appellants, were seated in chairs in the vicinity of the pool talking to a Mr. Driver and other residents while the McGivern children and others played in the pool. Subsequently, an unidentified child approached the McGiverns and remarked that their son, Arthur, age 12, had been lying face down in the water for quite a while. Because Arthur was given to testing his endurance by holding his breath under water in that manner, Mr. McGivern and Mr. Driver walked to the end

of the pool where Arthur was observed floating face down in the water. They watched Artie for "an inordinant length" of time before Mr. McGivern jumped in the water and swam underneath his son to take a look. He came back up and yelled. With Mr. Driver's assistance, the boy was pulled from the pool. He was not breathing and had a bluish complexion. Mr. Driver and a Mr. Collins tried both artificial respiration and mouth-to-mouth resuscitation. Someone obtained a mechanical resuscitator, but no one knew how to use it. The police, who had been summoned, arrived some 10 to 12 minutes after the boy was taken from the pool and also tried unsuccessfully to restore breathing. The boy was taken to a hospital and pronounced dead. *Held:*

1. Appellant, Northwestern Mutual, complains that the trial court erred in finding that the swimming pool in the instant case is a semi-public pool and governed by the Code of DeKalb County, State of Georgia, Section 189, et seq., which requires certain standards be met if "a public, semi-public or institutional swimming pool is operated." From the factual recitation in the pleadings, both the public and institutional categories are excluded. Appellant urges that the prefix "semi" in the ordinance has no meaning of sufficient certainty so as to advise citizens of what course of conduct they must follow in regard to the intendment of the Code, id., in relation to swimming pools. We agree only that some of the language in the ordinance is not plain; it does not have an exact or concrete meaning. The language, therefore, needs interpretation. *Carroll v. Ragsdale,* 192 Ga. 118, 120 (15 SE2d 210); *Oxford v. Carter,* 216 Ga. 821, 822 (120 SE2d 298). In determining the meaning of an ordinance, the court is bound by the rules of statutory construction. An ordinance intended to promote the public safety should receive a reasonable and practical interpretation to that end. *Smeltzer v. Atlanta Coach Co.,* 44 Ga. App. 53, 56 (160 SE 665). In our present affluent society a swimming pool is as much a demanded part of a motel, hotel or modern apartment complex accommodations as is a television set, air conditioning, or adequate parking facilities. However, it is obvious that a swimming pool per se entails more of an inherent risk for injury or disease

than do other "guest attractions." The need for regulation, therefore, is manifested. It is also clear that the general public is not entitled to utilize such facilities at will. The pool in the instant case was open to special members of the public only, i. e., tenants and guests of tenants. Thus, the prefix "semi" in the term "semi-public" has "partly the quality of a specified thing imitated." Webster's New International Dictionary, Second Edition, Unabridged. In short, the pool is plainly "almost public." In the light of the entire statute we do not find the language invalid on this ground. *Villyard v. Regents of University System of Ga.,* 204 Ga. 517, 523 (50 SE2d 313); *Teague v. Keith,* 214 Ga. 853 (108 SE2d 489). The enumeration is without merit.

2. Appellant enumerates that the trial court erred in overruling defendant's motion for summary judgment. Having found the ordinance valid, its violation constituted negligence per se as relied on by the plaintiff. See *Barrett v. Mayor &c. of Savannah,* 13 Ga. App. 86 (2) (78 SE 827), cited with approval in *Garrett v. Royal Brothers Co.,* 225 Ga. 533 (170 SE2d 294). But, it still remains a jury question as to whether or not such negligence, as well as the other negligence alleged, was the proximate cause of the injury. *Buckhead Glass Co. v. Taylor,* 226 Ga. 247 (174 SE2d 568). We find no error in the trial judge's ruling.

3. The cross appellants, the McGiverns, complain that the trial court erred in granting, in part, the motion to strike filed by the insurance company, defendant below. The latter complains that error lies in not granting the entire motion to strike.

Section 12 (f) of the Civil Practice Act (Code Ann. § 81A-112 (f)) provides: "Upon motion made by a party within 30 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." This Section for all practical purposes, in a decision of this case, is the same as Section 12 (f) of the Federal Rules of Civil Procedure. We may look to this rule and the Federal decisions thereunder, therefore, to aid us in determining the purpose of

meaning of this rule. These four terms used were not intended to be mutually exclusive; there is a certain amount of overlapping between them, particularly the first three with which we are here concerned. See Schenley Distillers Corp. v. Renken, 34 FSupp. 678; Contogeorge v. Syprou, 9 FR Serv 12f.2, Case 1; Burke v. Mesta Mach. Co., 5 FRD 134, 9 FR Serv 12f.26, Case 3. Impertinence has been said to consist of any allegation not responsive nor relevant to the issues involved in the action, and which could not be put in issue or be given in evidence between the parties. See Nordam v. City of Johnson City, 1 FRD 51, 1 FR Serv 12f.21, Case 1; Best Foods, Inc. v. General Mills, Inc., 3 FRD 459, 8 FR Serv 12f.21, Case 1; Gann v. Bernzomatic Corp., 262 FSupp. 301; A. B. T. Sightseeing Tours, Inc. v. Gray Line N. Y. Tours, Corp., 242 FSupp 365. "To determine whether a matter is impertinent one must first determine the scope of the issues' in controversy, and then, under 12 (f) determine whether the matter injected in the pleadings is relevant or material thereto." 2A Moore's Federal Practice, pp. 2422, 2423. Motions to strike alleged redundant, immaterial or impertinent or scandalous matter are not favored. Matter in pleadings will not be striken unless it is clear that it can have no possible bearing upon the subject matter of the litigation, and if there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied. Id., pp. 2429-2431, and cits.

(a) The trial judge's order indicates clearly that he struck certain language from the various allegations of negligence in paragraph 11 of the complaint based on the fact that these alleged failures to have certain equipment and personnel were as to persons and equipment not required by the DeKalb County Ordinance. As we construe the complaint, these allegations of negligence in paragraph 11 were allegations made independent of any violation of the DeKalb ordinance and were not intended to be allegations of negligence per se, nor were they designated as such, but were denominated gross negligence. It may be that the trial judge was misled by the opening language of paragraph 12 immediately following to wit: "Defendant's violations of the DeKalb

Ordinance, recited heretofore, were wilful and malicious," etc. As we construe this language, the words "recited heretofore" merely referred to the "DeKalb County Ordinance" and did not refer to any "violation" of that ordinance alleged prior thereto, as there were no such violations alleged. This language clearly refers to violations alleged in paragraph 12. The trial judge erred, therefore, in striking the allegations as to described persons and equipment on the grounds that such persons and equipment were not included in the requirements as to persons and equipment contained in the DeKalb County ordinance. This would be no reason for striking general allegations of negligence not controlled by the ordinance. In so holding, it is unnecessary to determine whether the language stricken conformed to the requirements of the ordinance or not.

(b) We do further hold, however, that the language as to persons and equipment stricken from the allegations of negligence in paragraph 11 of the complaint do not clearly appear to have no possible bearing on the subject matter of the litigation; nor can it be said without doubt that under any contingency these allegations do not raise an issue. For this reason, also, it was error to strike the language in these allegations above referred to.

(c) There was no error, however, in striking from paragraph 12, which contained purported allegations of violations of the DeKalb County ordinance, those allegations relating to the failure to have such persons and equipment at the swimming pool as were not specifically required by the ordinance.

(d) Nor was there error, after hearing evidence on the motion for summary judgment, in striking those portions of the petition and prayer as sought punitive damages and attorney fees based upon an alleged wilful violation of the DeKalb County ordinance.

(e) Nor was there error, on grounds of pleading evidence, in striking paragraph 10A attaching the "Recommended Standards of the Georgia Department of Public Health" relating to swimming pools which, including the title, consisted of 23 printed pages containing 30 sections, some with numerous subdivisions

and only two sections and two pages of which, if admissible, have any relationship or bearing on the issues in the case. Karon v. Ethel Gusdime Corp., 4 FR Serv 8a .23, Case 1; Minnesota Mining & Mfg. Co. v. Carborundum Co., 3 FRD 5, 7 FR Serv 12f.21, Case 1. We do not rule upon the admissibility of this evidence.

(f) There was no harmful error, if any, in overruling the remaining grounds of the motion to strike, nor in sustaining the other grounds not herein specifically discussed.

4. No consideration has been given to the "nunc pro tunc" order in each case dated and entered after the appeals and cross appeals were entered and one day before the cases were docketed in this court, as we have no jurisdiction to do so.

*Judgment affirmed in case No. 49021 and case No. 49023. Judgment reversed in case No. 49022 and case No. 49024. Eberhart, P. J., and Clark, J., concur.*

SUBMITTED FEBRUARY 6, 1974 — DECIDED JUNE 24, 1974 — REHEARING DENIED JULY 9, 1974 —

*Moore & Morris, Charles E. Moore,* for appellant.
*Marvin P. Nodvin, Ira S. Zuckerman,* for appellees.